# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| HASSAN CHERRY, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 09-1499 (MLC) |
| | : | |
| COUNTY OF MIDDLESEX, et al., | : | |
| | : | REPORT AND RECOMMENDATION |
| | : | |
| Defendants. | : | |
| | : | |

This matter comes before the Court by way of Motions to Dismiss Plaintiff's Third Amended Complaint,[1] filed by Defendants County of Middlesex New Jersey, Middlesex County Adult Correction Center, Edward Cicchi, Lt. Mark Rodziewicz, Officer Paul DeAmicis, Richard Christiansen, and Connie W. Barth [Docket Entry No. 89] (hereinafter referred to as the "Middlesex Corrections Defendants"), joined by Defendants Joseph Graffagnino [Docket Entry No. 91], County of Middlesex Board of Freeholders and Christopher Rafano as the Freeholder Assigned to and/or In Charge of Middlesex County Adult Correctional Center [Docket Entry No. 92]; *see also* [Docket Entry No. 20], James Shapiro [Docket Entry No. 93], Michael Delanoy [Docket Entry No. 94], and Officers Bavosa, Brown and Napravnik [Docket Entry Nos. 95, 96] (hereinafter referred to collectively as "Defendants"). Plaintiff Hassan Cherry ("Plaintiff") has not opposed these motions.[2] The Honorable Mary L. Cooper, U.S.D.J., referred the matter to the

---

[1] Defendants refer to the amended document at issue as the Third Amended Complaint, since the document differs from the original Second Amended Complaint filed at Docket Entry No. 48. For purposes of this Report and Recommendation, it is referred to as the Second Amended Complaint since that is the way it appears on the docket.

[2] Even when motions to dismiss are unopposed, district courts must still analyze them substantively. *See Stackhouse v. Mazurkiewicz*, 951 F.2d 29, 30 (3d Cir. 1991). Therefore,

undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 (b)(1)(B).  For the

reasons set forth below, the undersigned respectfully recommends that Defendants' motions to

dismiss with prejudice be GRANTED.

## I.   FACTS AND PROCEDURAL HISTORY

Plaintiff, represented by Gerald Gordon, Esq. ("Plaintiff's counsel" or "Gordon"), filed an

initial Complaint against Defendants on March 30, 2009, asserting forty-one counts, including

civil rights violations and tort claims, arising out of an alleged assault on Plaintiff by Defendants

and related retaliation.  Statement of Material Facts in Support of Defendants' Motion to

Dismiss, With Prejudice, Plaintiff's Third Amended Complaint [Docket Entry No. 89]

(hereinafter, "S.O.M.F.") ¶ 1; *see generally* Complaint [Docket Entry No. 1].  On July 29, 2009,

the Honorable Mary L. Cooper, U.S.D.J., ordered that because the Complaint had been pending

for almost 120 days, it would be dismissed pursuant to Federal Rule of Civil Procedure 4(m)

unless Plaintiff could establish service had been made upon Defendants.  Court Order dated July

28, 2009 [Docket Entry No. 2].  Four defendants were later terminated from the matter on

August 17, 2009 for Plaintiff's failure to provide proof of service.  Court Opinion and Order

dated August 17, 2009 [Docket Entry Nos. 4, 5].  Defendants then filed motions to compel a

more definite statement, which the Court granted by Order dated April 13, 2010, by which

Plaintiff was ordered to file such statement no later than April 30, 2010. S.O.M.F. ¶¶ 1, 2;

Defendants' Motions for a More Definite Statement [Docket Entry Nos. 13, 16 18-22, and 27];

April 13, 2010 Order [Docket Entry No. 29].

On or about May 6, 2010, Plaintiff's counsel sent Defendants a copy of an "Amended

_____

despite Plaintiff's failure to respond to the instant motion, the Court will address the merits of the
motion to dismiss.

Complaint," seeking their consent to file it in lieu of a more definite statement, explaining that it would "include what [will] be a More definite Statement." S.O.M.F. ¶ 2; Counsel's Certified Exhibits (each of which is hereinafter referred to as "Exhibit"), Exhibit A. Defendants responded that it was understood that the Amended Complaint was being offered in response to the Order for a more definite statement and consented to it for that purpose. S.O.M.F. ¶ 3; Exhibit B.

Although the April 13, 2010 Order required Plaintiff to file the more definite statement by April 30, 2010, he instead filed an Amended Complaint on June 14, 2010. S.O.M.F. ¶ 4; Amended Complaint [Docket Entry Nos. 30, 31, 32]. Gordon sent a letter to the Court the same day, presumably to explain the delay, stating that a problem with his pdf program had prevented him from filing the Amended Complaint the week prior. Plaintiff's Letter to the Court Regarding the Amended Complaint [Docket Entry No. 33]. Because the Amended Complaint as filed contained eleven additional counts that Gordon had neither received consent for nor included in his draft to Defendants, several Defendants moved to partially dismiss the Amended Complaint under Federal Rule 12(b)(6). S.O.M.F. ¶¶ 4, 5; Defendants' First Motions to Dismiss [Docket Entry Nos. 34, 35, 37, 40, 41].

Plaintiff opposed this motion by letter memoranda filed on August 23, 2010. S.O.M.F. ¶ 5; Plaintiff's Opposition to First Motions to Dismiss [Docket Entry Nos. 44, 45]. Gordon simultaneously filed another letter, explaining that he "would have filed opposition and a cross motion to amend the complaint [last week, but] was prevented from doing either because of injuries sustained… in a motor vehicle crash which occurred on [July 18, 2010]" and that his ability to work as of August 18, 2010 "was, and continues to be difficult and restricted." Plaintiff's August 23, 2010 Letter [Docket Entry No. 46]. Regarding his opposition letter,

Gordon wrote that "I think I could have done better," and requested an opportunity to re-file opposition, permission to file his motion to amend, and an extension of the motion date from September 7, 2010 to October 4, 2010. *Id.*

Judge Cooper denied Defendants' motions for partial dismissal on August 26, 2010 and instead granted Plaintiff the opportunity to seek leave from the undersigned to file a Second Amended Complaint. S.O.M.F. ¶ 7; August 26, 2010 Order [Docket Entry No. 47]. Plaintiff thereafter filed a "Motion to Amend/Correct" the First Amended Complaint, attaching with it a proposed "Second Amended Complaint" on September 15, 2010. S.O.M.F. ¶ 7; Motion to Amend/Correct the First Amended Complaint [Docket Entry No. 48]. Several Defendants filed opposition to Plaintiff's Motion in or about October 2010. S.O.M.F. ¶ 7; Defendants' Opposition to the Motion to Amend/Correct the First Amended Complaint [Docket Entry Nos. 50, 51, 54, 55, 56].

The Court scheduled a conference call for October 1, 2010 to address the proposed amended pleading. S.O.M.F. ¶ 8, FN 1. Because Gordon advised that he was out of the country, the Court rescheduled the conference to October 15, 2010. S.O.M.F. ¶ 8, FN 1; Order dated October 13, 2010 [Docket Entry No. 52]. Gordon then requested that the conference be adjourned because of a funeral, and then again because of a trial. S.O.M.F. ¶ 8, FN 1. The conference was finally held on October 21, 2010. S.O.M.F. ¶ 8, Exhibit C; Order dated October 22, 2010 [Docket Entry No. 57]. As a result of this conference, the Court entered an Order on October 22, 2010, directing counsel to confer as to the proposed Second Amended Complaint. S.O.M.F. ¶ 8; Order dated October 22, 2010. Defendants agreed to an altered version of the Second Amended Complaint, which Plaintiff filed on December 2, 2010. S.O.M.F. ¶ 13; Second Amended Complaint [Docket Entry No. 61].

The Court conducted an initial conference, in which Gordon participated, on March 14, 2011, setting a schedule for fact discovery to end by July 15, 2011. The Court also scheduled a settlement conference. S.O.M.F. ¶ 14; Order dated April 26, 2011 [Docket Entry No. 76]. Several Defendants served Plaintiff with discovery requests in or around May 2011; specifically, Craig Corson, Esq. ("Corson"), Counsel for the Middlesex Corrections Defendants, sent requests on May 2, 2011; Marc Mory, Esq. ("Mory") Counsel for Defendant Graffagnino, sent his client's Interrogatories and Notice to Produce on May 5, 2011; and John Gillick, Esq. ("Gillick"), Counsel for Defendant Delanoy, served Plaintiff with Interrogatories and a Notice to Produce on May 10, 2011. *See* Exhibit H; S.O.M.F. ¶ 21, Exhibit L; S.O.M.F. ¶ 16, Exhibit I.

At Gordon's request, the Court adjourned the scheduled settlement conference and instead held a telephonic status conference on May 31, 2011, during which Gordon advised that he was scheduled to meet with his client to prepare responses, and would serve answers to interrogatories and responses to document requests shortly. S.O.M.F. ¶ 17, Exhibit H. Gordon requested a standing order to permit him contact with Plaintiff at the New Jersey State Prison, which the Court granted. Order dated May 26, 2011 [Docket Entry No. 79].

The Court also ordered Plaintiff to serve Defendants with an updated settlement demand by June 8, 2011, and rescheduled the settlement conference for July 15, 2011 (the closing date of fact discovery). S.O.M.F. ¶ 17; Order dated June 3, 2011 [Docket Entry No. 80]. The July 15, 2011 conference was adjourned at Gordon's request, and the Court instead conducted a status conference wherein Gordon advised that he did not intend to depose any of the Defendants but would rely solely on transcripts from the criminal trial, which he stated had been ordered. [Docket Text Entry July 14, 2011]; Order dated August 8, 2011 [Docket Entry No. 82]; S.O.M.F. ¶ 18. Although the deadline to complete fact discovery had passed, and despite the numerous

5

follow up letters sent by counsel for Defendants, Gordon still had not responded to any of the discovery demands as of July 15, 2011.  Exhibits L, H, I.

As a result of the July 15, 2011 telephone conference, the Court extended the fact discovery deadline to September 30, 2011, emphasizing that no further extensions would be granted absent good cause shown. S.O.M.F. ¶ 20; Order dated August 8, 2011[Docket Entry No. 81].  Plaintiff was directed to respond to all of Defendants' pending discovery requests, including Answers to Interrogatories and Responses to Notices to Produce, by no later than August 8, 2011. S.O.M.F. ¶¶ 20, 26; Order dated August 8, 2011.

On July 26, 2011, Gordon e-mailed Defendants requesting an electronic copy of their discovery demands, which they provided.  S.O.M.F. ¶ 18, FN 5, Exhibit J; S.O.M.F. ¶ 16, Exhibit I.  On August 2, 2011, Gordon advised Defendants that he was to meet with his client on August 5, 2011 to have discovery responses executed.  S.O.M.F. ¶ 19, Exhibit K.  Mory contacted Gordon again on August 9, 2011 regarding the long overdue answers.  Exhibit L. Gillick wrote to Gordon on August 15, 2011 requesting responses to his client's discovery requests.  S.O.M.F. ¶ 22; Exhibit L.  Gordon replied to all Defendants on August 16, 2011, stating that his client had signed the Interrogatories, but that he would not be able to send them until later that day. S.O.M.F. ¶ 22, Exhibit L.

Mory repeated his request again on August 17, 2011.  S.O.M.F. ¶ 22, Exhibit L.  On that same date, Gordon served Plaintiff's Answers to Defendant Graffagnino's Interrogatories, labeled "Hassan Cherry's Answers to Interrogatories which are Applicable to All Defendants" (which were missing answers to interrogatories 23-25).  S.O.M.F. ¶¶ 22-23, Exhibit L. This same set of Answers was forwarded to all other Defendants via e-mail.  S.O.M.F. ¶ 22, Exhibit L. Gordon's e-mail indicated that "[s]imilar answers will follow with separate Certifications as to

all other Defendants." Exhibit L.

On August 18, 2011, Gordon e-mailed all Defendants with Plaintiff's responses to Defendant Graffagnino's Notice to Produce, providing "See Attached" as the response to each question. S.O.M.F. ¶ 22, Exhibit L. No documents were attached. S.O.M.F. ¶ 22, Exhibit L. The transmitting e-mail, however, stated that due to Plaintiff's incarceration, "he does not have the documents with him which ordinarily would be the subject of production" and that these documents "would be in the possession of the Defendants, Public Defender and Middlesex County Prosecutor." Exhibit L. On the same date, Gordon also sent responses to the Middlesex Corrections Defendants' Interrogatories, which, but for a few exceptions, simply provided "See Answer to question __ of Defendant Graffagnino's Interrogatories." Exhibit H.

On August 21, 2011, Gillick advised Gordon that the responses were unacceptable and requested answers to his client's specific Interrogatories. Exhibit I. On September 5, 2011, Mory requested responses to his client's three Interrogatories that had not been answered but received no response until the following month. Exhibit L. Corson also contacted Gordon on September 1, 2011 regarding Plaintiff's deposition availability. S.O.M.F. ¶ 24; Exhibit M. With discovery set to close by the end of the month, and having received no response to his request, Corson submitted a Proposed Order on September 7, 2011 to compel Plaintiff's deposition for September 22, 2011. S.O.M.F. ¶ 24; Exhibit M. The Court entered the Order on September 12, 2011, warning that if Plaintiff failed to fully and completely answer all deposition questions, Defendants could file Rule 37(b) motions to dismiss. S.O.M.F. ¶ 24; Order dated September 12, 2011 [Docket Entry No. 82].

At or about the same time, Gordon advised Defendants of his inability to appear for the September 22, 2011 deposition, citing "personal circumstance" and advising that he was

awaiting "clearance from Dr around th 10th [sic]." S.O.M.F. ¶ 25, Exhibit N. Defendants then wrote to this Court on September 13, 2011, advising of Gordon's inability to appear at the ordered deposition and notifying the Court of recent events that had occurred in *Caffrey v. County of Middlesex, et al.*, Docket No. 3:10-cv-5055 (FLW/DEA), in which many of the same counsel in this case also had Gordon as an adversary. In the *Caffrey* matter, Gordon advised Judge Wolfson on September 2, 2011 that memory loss and health issues might impact his ability to prosecute the case. *Caffrey v. County of Middlesex, et al.*, Docket No. 3:10-cv-55 (FLW/DEA) [Docket Entry No. 34].

Defendants requested a telephone conference, which was scheduled for September 19, 2011. S.O.M.F. ¶¶ 25, 26, Exhibit N. On September 16, 2011 Defendants attempted to confirm this call with Gordon via e-mail, to which Gordon responded that he could not appear because he was out of the country. S.O.M.F. ¶ 27, FN 10, Exhibit O. The call was adjourned to September 19. Two days later on September 18, 2011, however, Gordon wrote to the Court requesting adjournment of the September 19, 2011 conference, citing health problems and memory loss. S.O.M.F. ¶ 27, Exhibit P. As a result of these issues and Gordon's representation that he was to meet with his doctor on October 24, 2011, the undersigned adjourned the call and stayed this matter until October 26, 2011, granting Gordon time to assess his condition and determine his ability to proceed. S.O.M.F. ¶ 27, Exhibit P.

During the stay, Gordon sent several letters to update the Court on his health status. On October 5, 2011, he advised that he had met with a doctor on October 4, 2011 and was taking steps to determine the cause of his memory loss and would potentially meet with a neurologist. Exhibit Q. On October 9, 2011, he forwarded the doctor's confirmation of the October 4, 2011 appointment, which also set forth that steps were being taken to determine the cause of his

8

memory loss.  Exhibit Q.  On October 24, 2011, Gordon wrote indicating that he was to meet with his doctor on November 4, 2011.  Exhibit Q.  He also represented that he was to meet with Plaintiff on October 28, 2011 and suggested that the deposition be scheduled between November 14 and 23, 2011.  Exhibit Q.

The matter resumed on October 25, 2011 during a status conference call, wherein all parties, including Plaintiff represented by Gordon, participated and agreed upon deadlines.  S.O.M.F. ¶ 28.  The schedule extended fact discovery until December 16, 2011.  Order dated November 4, 2011 [Docket Entry No. 86].  Defendants were directed to serve demands for more specific responses to discovery by October 28, 2011.  *Id.* Gordon was ordered to supply fully responsive answers to all of their discovery requests by no later than November 3, 2011, to give Defendants adequate time to prepare for the deposition, which was ordered for November 18, 2011, a date suggested by Gordon.  S.O.M.F. ¶¶ 28, 30; Order dated November 4, 2011; Order for Deposition of Plaintiff dated November 4, 2011 [Docket Entry No. 85].

Upon receiving no responses by the November 3, 2011 deadline, Mory contacted Gordon on November 4, 2011.  S.O.M.F. ¶ 23, Exhibit L.  Gordon wrote a letter to the Court on November 4, 2011, explaining that he had been in a doctor's appointment on November 3, 2011 and was unable to have his client execute responses in accordance with the deadline.  Exhibit Q.  Gordon then advised Defendants that he would meet with Plaintiff and send responses by November 8, 2011.  S.O.M.F. ¶ 23, Exhibit L.

Gordon did not send answers to the Mory interrogatories until November 12, 2011.  S.O.M.F. ¶ 22, Exhibit L.  These answers remain uncertified to date.  Exhibit L.  Responses to Corson's October 27, 2011 demand for more specific interrogatory answers were sent on November 14, 2011, and Corson replied the same day advising Gordon that they were deficient.  S.O.M.F. ¶ 31;

9

Exhibit R.. S.O.M.F. ¶ 29, 31; Exhibits Q, R. These responses were similarly uncertified and remain so to date. Exhibit R. At this point, Clark Convery, Esq., counsel for Defendant Shapiro, still had not received a response to his demand for more specific answers to his client's Interrogatories, which had been sent on October 25, 2011. Exhibit V.

On behalf of all Defendants, Corson wrote to the Court on November 14, 2011, advising that Plaintiff's responses were conclusory, unresponsive, uncertified, untimely, and sent only four days prior to Plaintiff's scheduled deposition. S.O.M.F. ¶ 32, Exhibit R. Defendants therefore requested an adjournment of the deposition and permission to file motions to compel fully responsive answers and/or motions to dismiss. S.O.M.F. ¶ 32, Exhibit R. The undersigned adjourned the deposition and directed Plaintiff to respond by November 18, 2011 to Defendants' assertion that discovery responses were neither timely nor responsive. S.O.M.F. ¶ 33; Order dated November 15, 2011 [Docket Entry No. 87]. That same date, Gordon wrote to the Court explaining that he had completed all of the Interrogatories but his client had not signed them "due to matters subject to Attorney Client privilege." Exhibit S. Gordon further stated that "the Answers to Interrogatories provided some months ago, include a detailed factual narrative of the events which are the subject matter of his claims." Exhibit S. He further represented that he would have the answers certified that week but that he did not "expect that there will be any changes to the Interrogatories [and would] have a paralegal forward them uncertified to counsel on Wednesday, November 16, [2011]." S.O.M.F. ¶ 34, Exhibit S. On November 16, 2011, Convery received uncertified responses to his client's Interrogatories. Exhibit V. Despite numerous follow ups letters, these responses remain uncertified to date. Exhibit V.

By November 30, 2011, having received no certification or updated discovery answers, Defendants again requested permission to file motions to dismiss pursuant to Federal Rule of

Civil Procedure 41(b) and *Poulis v. State Farm Fire and Casualty Co.* S.O.M.F. ¶ 35, Exhibit T. The Court then scheduled a telephone conference for December 15, 2011. S.O.M.F. ¶ 36. On the morning of the scheduled conference, Gordon wrote to the Court, advising that he was unavailable due to an unanticipated root canal but that he had arranged for another attorney to appear on the call in his place. S.O.M.F. ¶ 37, FN 12; Exhibit U. Gordon further represented that Plaintiff had completed and certified his answers "in November, prior to Thanksgiving" but would not authorize Gordon to send the certification because he wanted time to decide if he should get new counsel. S.O.M.F. ¶ 36, Exhibit U. Gordon further represented that he had not been in contact with his client since November 2011 but that they were scheduled to speak on December 19, 2011. S.O.M.F. ¶ 36, Exhibit U. Gordon stated that if by that time Plaintiff had not obtained a new attorney or would not allow him to serve the certified responses, he would request to be relieved as Plaintiff's attorney. He further stated, "I understand [Defendants] may request permission to file Motions to Dismiss." Exhibit U. In regard to his health status, Gordon also advised that the medication he was taking had been effective. Exhibit U.

The December 15, 2011 conference proceeded with Greg Hadju-Nemeth, Esq., appearing on Plaintiff's behalf. As a result of the conference, the fourth Pretrial Scheduling Order was entered on December 20, 2011, ordering Plaintiff to provide fully responsive answers to all Defendants' outstanding discovery requests (including certified answers to interrogatories) by January 10, 2012 or risk facing motions to dismiss by Defendants. S.O.M.F. ¶ 37. Because Plaintiff failed to comply with the Order, Defendants filed the pending motions to dismiss. Plaintiff has not filed opposition and has not contacted this Court since December 2011.

## II.    STANDARD OF REVIEW

Two Federal Rules of Civil Procedure grant this Court the authority to impose the  sanction

of dismissal.  First, under Federal Rule 41(b), "[i]f the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it." Fed. R. Civ. P. 41(b).  Second, "on motion or on its own, the court may issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)–(vii), if a party or its attorney… fails to obey a scheduling or other pretrial order." Fed. R. Civ. P. 16(f).  Orders authorized by Federal Rule 37(b)(2) include "dismissing the action or proceeding in whole or in part." Fed. R. Civ. P. 37(b)(2)(A)(v).

Defendants request dismissal of this case with prejudice.  Plaintiff has not opposed the motion.  While dismissal with prejudice is a drastic sanction, the decision to dismiss an action lies within the discretion of the district court. *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 222 (3d Cir. 2003); *see Poulis v. State Farm Fire and Casualty Co.*, 747 F.2d 863, 868, 870 (3d Cir. 1984) (finding that although the Third Circuit "might not have reached the same result as did this district court judge, we cannot say that the district court abused its discretion in ordering the dismissal"). In deciding whether dismissal is an appropriate sanction, a district court must consider and balance all six factors established in *Poulis*, which include (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim (or defense). *Id.* at 868.  All factors should be considered, but not every factor "need be met for a district court to find dismissal is warranted." *Hicks v. Feeny*, 850 F.2d 152, 156 (3d Cir. 1988).

## III.   ANALYSIS

### 1.   The extent of the party's personal responsibility.

Even if a plaintiff lacks responsibility for his counsel's conduct, the Third Circuit has found that this factor is "not dispositive" in determining whether dismissal is appropriate. *Poulis,* 747 F.2d at 868.  In fact, the *Poulis* court affirmed dismissal of the plaintiffs' case with prejudice, notwithstanding the finding that plaintiffs themselves had not been shown to be personally responsible for their attorney's dilatoriness.  *Id.* at 869.  This is in line with the Supreme Court's express ruling in *Link v. Wabash R. Co.*, 370 U.S. 626, 633 (1962), that there is "no merit to the contention that dismissal of a petitioner's claim because of his counsel's unexcused conduct imposes an unjust penalty on the client."  In *Link*, an attorney's failure to attend a scheduled pretrial conference led to dismissal of the action, which the Supreme Court held to be an appropriate exercise of the district court's discretion, considering that the party "voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent . . . each party is deemed bound by the acts of his lawyer-agent and is considered to have 'notice of all facts, notice of which can be charged upon the attorney.'"  *Id.* at 633-34 (quoting *Smith v. Ayer*, 101 U.S. 320, 326 (1880)).

While most of Defendants' submission focuses on the numerous delays caused by Plaintiff's counsel, Defendants nonetheless contend that Plaintiff is personally responsible for some of the ongoing delay, and argue that the first *Poulis* factor should thus weigh in their favor.  Defendants cite Gordon's November 15, 2011 letter to the Court, which stated that Plaintiff was refusing to sign the overdue Interrogatories, as well as a December 15, 2011 letter wherein Gordon asserted that Plaintiff had signed the Interrogatories but refused to allow Gordon to serve them.  Pointing to the fact that the undersigned facilitated communication between Plaintiff and his counsel by granting Gordon's requests for standing orders, Defendants argue that Plaintiff has played an

13

active role in this case and has been well aware of the course that the matter has taken.

The full extent of Plaintiff's personal responsibility for the ongoing delays is unclear, but Gordon's representations to the Court make it apparent that Plaintiff has personally played at least some role in the delays.  Gordon represented to the Court that Plaintiff had at first refused to sign and certify answers to Defendants' interrogatories, and then signed them but would not allow Gordon to produce them because he was considering hiring a new attorney.  Plaintiff himself appears to have delayed or prevented discovery by not allowing Gordon to produce interrogatory answers.  Further, despite expressing his desire to look into hiring new counsel, Plaintiff has not done so.  Plaintiff has not contacted the Court to inquire about finding new counsel or about the status of his case. Plaintiff has not acted on his apparent concern regarding Gordon's representation.  The Court therefore finds that at this point this factor weighs in favor of dismissal.

## 2.  The prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery.

Prejudice can occur due to "the irretrievable loss of evidence, the inevitable dimming of witnesses' memories, or the excessive and possibly irremediable burdens or costs imposed on the opposing party." *Scarborough v. Eubanks*, 747 F.2d 871, 876 (3d Cir. 1984).  In addition, "the burden imposed by impeding a party's ability to prepare effectively a full and complete trial strategy" may constitute sufficient prejudice for purposes of the *Poulis* analysis. *Ware,* 322 F.3d at 22.

Defendants argue that they have been prejudiced by Plaintiff's failure to meet scheduling orders and respond to discovery and that the second *Poulis* factor should therefore weigh in favor of dismissal.  Specifically, they cite Plaintiff's lack of cooperation regarding discovery answers despite their numerous requests and Plaintiff's failure to submit settlement demands in a timely

14

fashion.  They argue that these failures prevented them from being able to prepare their defense and have resulted in the filing of unnecessary applications and motions.  Defendants also claim that several officers listed in their initial disclosures have retired or are deceased.  It would be burdensome to locate retired personnel for purposes of the litigation and the testimony of those that are deceased is now lost.  Given that the allegations made in the complaint are based on events that occurred several years ago, Defendants assert that they will continue to be prejudiced if the case is not dismissed.

The Court finds that Defendants have demonstrated significant prejudice.  Indeed, this matter has required continual judicial intervention to enforce rules, deadlines, agreements and Orders.   Defendants have been deprived of the information necessary to respond to Plaintiff's claims and have been forced to request relief from this Court again and again.  Plaintiff's continued inability to respond to discovery demands, regardless of the Court's numerous extensions, has worked a prejudice on Defendants by forcing them to send unnecessary letters and otherwise follow up to try to obtain answers to which they were entitled.   The Court finds that Plaintiff's lack of cooperation regarding basic discovery can be best exemplified by the fact that to date, not one Defendant has received a full set of certified answers to Interrogatories. Regardless of any similarity between the various discovery requests that Plaintiff received, it is a basic tenet of our adversarial system that each defendant named in a lawsuit is entitled to responses to his specific requests so that they may determine their own strategies in the litigation. Plaintiff chose to file a lawsuit against a multitude of defendants, each of whom is entitled to his own discovery responses.  The Court also agrees that because named witnesses have retired or are deceased, there is an increased burden on Defendants resulting from the delays Plaintiff has caused.  The Court therefore finds that the second *Poulis* factor weighs in favor of dismissal.

15

### 3.   A history of dilatoriness.

In assessing whether there has been a history of delay, the Court considers the party's conduct over the entire course of the litigation. *Adams v. Trustees of the New Jersey Brewery Employees' Pension Trust Fund*, 29 F.3d 863, 875 (3d Cir. 1994).  A history of dilatoriness exists in a case where a party causes extensive or repeated delay. *Id.* at 874.

The undisputed record in this case reveals an ongoing pattern of complete disregard for the Federal Rules and the Orders of this Court through the following examples of Plaintiff's ongoing conduct:[3]

- Failure to submit a viable form of Complaint, which in its initial form was seventy-one pages of duplicative, often incoherent and unsubstantiated claims, which resulted in the Court ordering Plaintiff to file a More Definite Statement [Docket Entry No. 29];

- Failure to timely submit the court-ordered more definite statement or the agreed-upon form of Amended Complaint;

- Failure to timely move for leave to file the Second Amended Complaint, [Docket Entry No. 47], instead filing it without consent or leave of court, resulting in additional motion practice and the  pleading being stricken from the docket;

- Failure to serve certified responses to Interrogatories as required under Federal Rule 33(b);

- Failure to serve answers to each Defendant's set of Interrogatories, instead relying on one set of Answers as to all interrogatories served by the different Defendants;

- Failure to serve discovery responses that were responsive or factual, leading to Defendants' multiple requests for more specific answers;

- Failure to produce a single document in response to Defendants' Notices to Produce,

---

[3] The events set forth are culled from the record supplied by Defendants as well as from the docket in this case.

including the criminal trial transcripts upon which he said he would rely at trial;

- Failure to be available for his client's scheduled deposition, even though the dates were selected at his suggestion and were court-ordered;

- Failure to be available for court-ordered conferences for a variety of reasons, including memory loss, a car accident, a funeral, and a root canal, among other reasons;

- Failure to be prepared or available for settlement conferences, resulting in repeated adjournments.

Over the course of three years, Plaintiff's repeated excuses and delays have prevented this action from moving forward. Time and again, the Court has allowed extensions in scheduling conferences and deadlines for filings, and has offered Plaintiff many opportunities to prosecute this case in accordance with the rules. Because Plaintiff's actions over the course of this matter demonstrate consistent dilatoriness, this factor weighs heavily in favor of Defendants' motion to dismiss.

**4. Whether the conduct of the party or the attorney was willful or in bad faith.**

The Third Circuit has found that "merely negligent or inadvertent" conduct is not considered willful. *Emerson v. Theil College*, 296 F.3d 184, 191 (3d. Cir. 2002). Defendants submit that Plaintiff's actions have demonstrated a pattern of willful behavior and that the fourth *Poulis* factor has thus been met. They argue that after providing Plaintiff with ample accommodations, the Court should view Plaintiff's continued delays, failure to respond to Orders, and failure to respond to Defendants' requests as a conscious and willful disregard of his obligations to the Court. Without a response from Plaintiff on this motion, it is certainly difficult to evaluate whether the conduct at issue is in some way justified or is instead willful or in bad faith. The sheer number of extensions granted at Gordon's request, however, weigh in favor of a finding of

willfulness.  The Court cannot overlook the fact that Plaintiff's counsel has had numerous chances to prosecute this case and engage in discovery, and yet as of this date, he has not done so.  The Court finds that this factor thus weighs in favor of dismissal.

**5.  The effectiveness of sanctions other than dismissal.**

Alternative sanctions can include warnings, formal reprimand, imposition of attorneys' fees or costs on the dilatory party, temporary suspension of the culpable counsel, dismissal of the suit "unless new counsel is secured," or "placing the case at the bottom of the calendar." *Titus v. Mercedes Benz of North America*, 695 F.2d 746, 749-50 (3d. Cir. 1982).  Just because lesser sanctions are possible does not mean that dismissal of a matter is inappropriate.  *See Hoxworth v. Blinder, Robinson & Co., Inc.*, 980 F.2d 912, 922. (3d Cir. 1992).

In support of their claim that sanctions other than dismissal are not appropriate in this case, Defendants point to the fact that warnings and Orders not only have been ineffective in compelling Plaintiff's cooperation, but they have in fact been routinely ignored.

The Court finds that Plaintiff has repeatedly delayed this litigation by ignoring the Orders of this Court and the requests of his adversaries.  Firm deadlines and warnings have been ignored, including specific warnings that the case could be subject to dismissal if no action were taken. The Court finds that admonishing or otherwise reprimanding Plaintiff would be ineffective at moving the case forward.  There is no reason to believe a lesser sanction would prompt compliance with Orders or spur Plaintiff into prosecuting the matter.  Moreover, while it is true that "courts should strive to resolve cases on their merits whenever possible," the Third Circuit has concluded that "justice also requires that the merits of a particular dispute be placed before the court in a timely fashion so that the defendant is not forced to defend against stale claims." *McCurdy v. American Bd. of Plastic Surgery*, 157 F.3d 191, 197 (3d Cir. 1998).  Because the

18

Court is convinced that lesser sanctions would be ineffective and unjust to Defendants, this factor thus weighs in favor of dismissing the Complaint.

### 6.  The meritoriousness of the party's claims.

The standard for whether Plaintiff's claims have merit is not a summary judgment standard; rather, the question is whether the allegations of the pleadings, if established at trial, would support recovery by the plaintiff or would constitute a complete defense." *Poulis*, 747 F.2d at 869-870. The inclusion of this factor is largely neutral. *See Hicks*, 850 F.2d at 156.

Arguing that this factor should be weighed in favor of dismissal, Defendants claim that Plaintiff's allegations are conclusory and that no documentation has ever been produced which would support the claims as they currently stand. Specifically, Defendants point out that criminal trial transcripts, which Gordon represented would be the only form of evidence used to prosecute this case at trial, have never been produced.

Upon review of Plaintiff's most recent complaint, the Court cannot find that the allegations, if proven, could not possibly result in a recoverable claim. Accordingly, the Court finds that this is a neutral factor under the *Poulis* analysis, and does not weigh either for or against dismissal.

### IV.    CONCLUSION

This action has been delayed through the fault of Plaintiff. The Court cannot protect the rights of all parties by allowing one side to continually disregard his obligations to prosecute the case and abide by Court Orders. At the expense of allowing the case to move forward, this Court has repeatedly accommodated Plaintiff's requests for rescheduling, extensions, and adjournments. Only so many delays of one party can be tolerated before further accommodation becomes unreasonable and unjust to the adversary. Plaintiff has demonstrated a lack of concern for the movement of his case, his adversaries, and this Court's time. In fact, Plaintiff has not

even responded to the instant motion to dismiss his case, despite the fact that Gordon is apparently healthy enough to prosecute in other matters.[4]

The Court is mindful that the decision to dismiss must be made in the context of the case as a whole, and that *Poulis* "did not provide a magic formula whereby the decision to dismiss or not to dismiss a plaintiff's complaint becomes a mechanical calculation." *Mindek v. Rigatti*, 964 F.2d 1369, 1373 (3d Cir. 1992). "Ultimately, the decision to dismiss constitutes an exercise of the district court judge's discretion and must be given great deference," as the district court is the one whose "orders, calendar, docket and authority" have been violated or disrupted. *Id.* at 1373. Not every factor must be met to warrant dismissal. *Hicks*, 850 F.2d at 156.

After careful evaluation and balance of the factors in the light most favorable to Plaintiff, the Court finds that a vast majority of the *Poulis* factors weigh strongly in favor of dismissal. In the face of such a clear record of violations and delays, the undersigned finds that dismissal with prejudice is the appropriate sanction in this case.

---

[4] The Court takes judicial notice of a letter sent by Gordon to Judge E. Salas, in which he represented that his health problems, which had also caused delays in that matter, had been resolved. *Adegbite et al. v. Murdoch et al.* Civil Action No. 12-520 (ES) (CLW), [Docket Entry No. 4]. Indeed, the *Adegbite* complaint was filed well *after* the health issues asserted in this case led to a stay of discovery.

## V.    RECOMMENDATION

For the reasons set forth above, and for good cause shown,

**IT IS** therefore on this   **21**st    day of **August, 2012**,

**RECOMMENDED** that Defendants' motions to dismiss the matter with  prejudice [Docket

Entry Nos. 89, 91, 92, 93, 94, 95, and 96] be **GRANTED**.  Pursuant to Local Civil Rule

72.1(c)(2), the parties have fourteen days from the date of this Report and Recommendation to

file and serve objections to the proposed findings and recommendations.

LOIS H. GOODMAN
United States Magistrate Judge